IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02174-WJM-BNB

ZOSIMO REYES SAENZ,

Petitioner,

v.

RENE GARCIA, JR., Warden,

Respondent.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to**

**28 U.S.C. § 2241** [Doc. #1] (the "Application") filed September 11, 2009, by Zosimo Reyes

Saenz (the "petitioner").  I respectfully RECOMMEND that the Application be DISMISSED.

## I.  STANDARD OF REVIEW

The petitioner is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however,

who must allege "sufficient facts on which a recognized legal claim could be based."  Hall v.

Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II.  BACKGROUND

The petitioner is incarcerated by the Bureau of Prisons ("BOP") at the Federal

Correctional Institution ("FCI") in Englewood, Colorado.  He is serving a 235 month sentence

for Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(A)(viii), and a consecutive 60 month sentence for Using and Carrying a Firearm

During a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1), for a total sentence of 295 months. *Response to Order to Show Cause Why Habeas Application should not be Granted* [Doc. #10] (the "Response"), Ex. 1, pp. 3-4. The petitioner's projected release date is August 21, 2016.

The Application alleges that in violation of the petitioner's statutory, due process, and equal protection rights, the respondent has wrongfully denied the petitioner placement in a halfway house[1] under the Second Chance Act of 2007, 42 U.S.C. § 17501 *et. seq*, and placement in home confinement under the Elderly Offender Home Detention Pilot Program, 42 U.S.C. § 17541 (established by the Second Chance Act).

### III.  ANALYSIS

#### A.  Statutory Rights

In January 2009, the petitioner submitted an informal request to FCI staff stating that he was being denied placement in a CCC or home confinement in violation of the Second Chance Act of 2007. *Application*, p. 17.[2] Kindel Brodigan, an FCI Case Manager, conducted a review of the petitioner's history on April 22, 2009, to determine whether the petitioner is eligible for release to a halfway house pursuant to the Second Chance Act. *Respondent's Supplemental Brief in Response to Order to Show Cause Why Habeas Application Should not be Granted* [Doc. #14] (the "Supplemental Response"), Ex. A, ¶ 10. The Second Chance Act of 2007 requires that the BOP:

---

[1] Halfway houses are also called community correctional facilities, community correction centers ("CCCs"), and residential re-entry centers ("RRCs").

[2] I cite to the page numbers of the Application as they are assigned by the court's docketing system.

> to the extent practicable, ensure that a prisoner serving a term of
> imprisonment spends a portion of the final months of that term (not
> to exceed 12 months), under conditions that will afford that
> prisoner a reasonable opportunity to adjust to and prepare for the
> reentry of that prisoner into the community.  Such conditions may
> include a community correctional facility.

18 U.S.C. § 3624(c)(1) (amended as a part of the enactment of the Second Chance Act of 2007,

as noted in the Historical and Statutory Notes, Short Title, 2008 Amendments).[3]

Ms. Brodigan determined that the petitioner's projected release date is August 21, 2016,

and that he is therefore ineligible for release to a halfway house.  A determination of halfway

house placement was deferred until 17 to19 months prior to the petitioner's release date.

*Supplemental Response*, Ex. A, ¶ 10.  Ms. Brodigan further determined that the petitioner

currently is precluded from placement in a halfway house because he is under an active detainer

from the Bureau of Immigration and Customs Enforcement ("ICE").  Id. at ¶ 11.

On April 23, 2009, Ms. Brodigan conducted a review of the petitioner's history to

determine if he was eligible for release under the Elderly Offender Home Detention Pilot

Program.  Id. at ¶ 5.  The Second Chance Act of 2007 authorizes the Attorney General to

"conduct a pilot program to determine the effectiveness of removing eligible elderly offenders

from a Bureau of Prisons facility and placing such offenders on home detention until the

expiration of the prison term to which the offender was sentenced."  42 U.S.C. 17541(g)(1)(A).

In order to be eligible for home detention, the offender must have "served the greater of 10 years

---

[3]Prior to the 2007 amendments, section 3624(c) limited the time for inmate eligibility for transfer to a halfway house to the lesser of ten percent of his sentence or the final six months of his sentence.  18 U.S.C. § 3624(c) (2000).

or 75 percent of the term of imprisonment to which the offender was sentenced." Id. at §17541(g)(5)(A)(ii).

Ms. Brodigan determined that the petitioner is not eligible for home detention under the Elderly Offender Home Detention Pilot Program because he has not served 75% of his sentence. *Supplemental Response*, Ex. A, ¶¶ 7-8. Rather, he began serving his 295 month sentence on January 5, 1996, and he will not reach the 75% mark of his sentence until he has served 221 months. Id. at ¶ 8. The petitioner is currently expected to reach his 75% mark on August 24, 2013. Id. In determining his eligibility for home detention, Ms. Brodigan did not take into consideration the fact that the petitioner is under an active detainer from ICE. Id. at ¶ 9.

Based on the record before me, it is clear that the petitioner was properly denied release to a halfway house under the Second Chance Act and home detention under the Elderly Offender Home Detention Pilot Program. Therefore, he did not suffer any statutory violations.

### B.  Due Process Rights

The Fifth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. V. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997). Thus, before determining whether a petitioner's procedural or substantive due process rights have been violated, the court must determine whether the petitioner has a liberty interest.

Generally, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). "[A]s long as the conditions or

degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Hewitt v. Helms, 459 U.S. 460, 468 (1983) (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1976)). Nevertheless, the state or federal government "may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483 (1995).[4]  A prisoner's liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

The record does not contain any evidence to demonstrate that the respondent's denial of the petitioner's requests for home detention and release to a halfway house imposed an atypical and significant hardship on the petitioner in relation to the ordinary incidents of prison life.  To the contrary, the petitioner is in the same predicament as all other federal inmates: he is ineligible for consideration for release to home detention or a halfway house until he has completed the requisite portion of his sentence.  The petitioner's due process claim should be denied.

_____

[4]In Sandin, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest.  The prior methodology required examination of prison regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement."  515 U.S. at 480-81.  The Court instead returned to the due process principles that were established and applied in Meachum v. Fano, 427 U.S. 215 (1976), and Wolff v. McDonnell, 418 U.S. 539 (1974).  Those principles focus on the nature of the deprivation instead of the language of a particular regulation.  Sandin, 515 U.S. at 481.

### C.  Equal Protection Rights

The petitioner claims that the respondent violated his equal protection rights by refusing to release him to home detention or a halfway house based on his status as a deportable alien. *Application*, p. 7.  The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend XIV, § 1.  The equal protection guarantee applies to the federal government through the Due Process Clause of the Fifth Amendment.  <u>Adarand Constructors, Inc. v. Slater</u>, 228 F.3d 1147, 1152 (10th Cir. 2000).  Equal protection mandates that the government shall treat similarly situated persons alike.  <u>Id.</u>

The record shows the Ms. Brodigan determined that, in addition to being statutorily barred from consideration for placement in a halfway house, the petitioner "would currently be precluded from [halfway house] placement as he has an active detainer from Immigration and Naturalization which was logged on December 2, 1996."  *Supplemental Response*, Ex. A, ¶ 11.[5]

The United States Court of Appeals for the Tenth Circuit has determined that denying a prisoner early release to a halfway house based on the prisoner's status as a deportable alien does not violate equal protection:

> [T]he federal government can treat aliens differently from citizens so long as the difference in treatment has a rational basis.  The courts that have considered claims similar to [the petitioner's] have

---

[5]There is nothing in the record to show that Ms. Brodigan considered the petitioner's alien status when finding him ineligible for home detention under the Elderly Offender Home Detention Pilot Program.  To the contrary, once she determined that the petitioner did not meet the statutory requirements for home detention, her assessment was concluded and she did not consider the petitioner's status as a deportable alien.  <u>Id.</u> at ¶ 9.

> reasoned that denying deportable aliens the opportunity to
> participate in certain pre-release programs does not violate equal
> protection.  We agree with the decisions of these courts-there is a
> rational basis to deem deportable aliens, who will be sent out of
> the country after the term of their sentence, ineligible for programs
> geared toward rehabilitating prisoners who will re-enter society
> after their release from confinement.

United States v. Tamayo, 162 Fed.Appx. 813, 816 (10th Cir. January 11, 2006) (internal

quotations and citations omitted).  Therefore, the petitioner has not suffered a violation of his

equal protection rights.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Application be DISMISSED

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ.

P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific,

written objections.  A party's failure to serve and file specific, written objections waives *de novo*

review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474

U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's

objections to this recommendation must be both timely and specific to preserve an issue for *de

novo* review by the district court or for appellate review.  United States v. One Parcel of Real

Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 23, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

7